**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VICTOR DAVID WARD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 25-cv-1866 (JMC) |

## MEMORANDUM OPINION

Plaintiff Victor David Ward, formerly known as Milton N. Ward III, sued the United States of America and the District of Columbia. ECF 1. He alleges that the United States and the District violated his rights by arresting and prosecuting him under "unconstitutional gun licensing and registration laws." *Id.* ¶ 7. He seeks numerous forms of relief, including damages. *Id.* at 16–17.

This matter is before the Court on Defendants' motions to dismiss and Ward's motion to amend the complaint. For the reasons discussed below, both Defendants' motions, ECF 24 and ECF 27, will be **GRANTED**. And because any amendment to Ward's complaint—including the amendment he has proposed here, ECF 31—would be futile, Ward's motion for leave to amend will be **DENIED**.[1]

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I. BACKGROUND

On a motion to dismiss, all well-pleaded factual allegations in the complaint are assumed to be true. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024). The Court presents the factual background as it is alleged in Ward's complaint.

On March 27, 2011, Ward was involved in a three-vehicle accident in the District of Columbia. ECF 1 ¶ 22. Although "[d]amage to all vehicles was minor and no one was injured," the driver of another vehicle called police. *Id*. Two Metropolitan Police Department Officers—including one Officer Vogel—came to the scene. *See id*. ¶ 23.

After speaking with Ward, Vogel asked him to provide his license, registration, and proof of insurance. ECF 1 ¶ 23. Ward provided the first two items but "could not find his insurance card where he normally kept it." *Id.* As Ward was looking for the card, Vogel "became impatient." *Id.* Vogel then "walked around to the other side of the vehicle[,] opened the front passenger door[,] and started searching [Ward's] vehicle." *Id.*

Ward told Vogel that he did not have permission to open the passenger-seat glove compartment. ECF 1 ¶ 25. But Vogel evidently missed the memo, because that is exactly what he did. *Id.* ¶ 23. And inside the glove compartment, Vogel found not an insurance card, but a loaded Glock 9mm pistol with an extra ten-round magazine. *Id.*

Vogel promptly arrested Ward on suspicion that he was "carrying a pistol without a license from the District of Columbia," a felony under District law. ECF 1 ¶ 24. And that arrest then led to a number of unfortunate consequences for Ward. First, Ward was detained for five days due to a District of Columbia policy requiring that anyone charged with a gun crime be held for at least that amount of time. *Id.* ¶ 26. Then, Ward—who until then had been employed "as an accounting/finance consultant [for] an intelligence agency"—lost his job. *Id.* Ward's vehicle was

also seized and forfeited under the District's "civil forfeiture scheme," along with his gun, magazines, and ammunition. *Id.*

At the time of his arrest, Ward lived in Virginia, a state "which had no licensing requirements for handguns." ECF 1 ¶ 21. By contrast, District of Columbia law imposed criminal penalties "for possessing or carrying an unregistered firearm or unregistered ammunition in the District." *Id.* ¶ 12. The ambit of that law was especially broad: Until the District amended its statutory code in 2014, it "maintained a total ban on carrying ready-to-use handguns outside the home or place of business." *Id.* ¶ 11. Thus, although Ward might have been a law-abiding citizen any time he was driving in his home state of Virginia, when he crossed the border into the District, he "unwittingly became" a criminal by virtue of his possession of an unregistered firearm. *See id.* ¶ 14.

After his arrest, the United States indicted Ward on three charges "related to the weapon and ammunition." ECF 1 ¶ 24; *see also Ward v. United States*, 318 A.3d 520, 522 (D.C. 2024). He pled guilty to one of them. ECF 1 ¶ 28. Under that plea, he was sentenced to thirty days of suspended jail time, nine months of unsupervised probation, and a $50 fine. *Id.*

Three years after that plea was entered, a federal court declared that the statute under which Ward had been convicted was unconstitutional on Second Amendment grounds. *See* ECF 1 ¶ 49 (citing *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014)). That ruling perhaps did not come as a surprise to Ward, because throughout his criminal case, he had maintained that his prosecution was unconstitutional. *See id.* ¶ 27. Indeed, Ward's crusade continued even after he put in his plea: In 2013, he sued Officer Vogel in federal court for violation of his rights under color of state law. *See id.* ¶ 29 (citing 42 U.S.C. § 1983). That case was dismissed for procedural reasons, but only after the D.C. Attorney General's Office had appeared in the case to argue that any

collateral attack on Ward's conviction was *Heck* barred. *See id.*; *see also Heck v. Humphrey*, 512 U.S. 477 (1994).

Ward, who perhaps may not have known about the *Heck* bar before, then turned his attention to invalidating his conviction. ECF 1 ¶ 30; *see also Heck*, 512 U.S. at 486–87 ("[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed . . . , expunged . . . , declared invalid . . . , or called into question by . . . issuance of a writ of habeas corpus."). Ward moved in Superior Court to withdraw his guilty plea, and after that motion was denied, he litigated the denial all the way up to the United States Supreme Court. ECF 1 ¶¶ 30–36. The Supreme Court ultimately summarily ruled in Ward's favor by vacating the denial and remanding to the District of Columbia Court of Appeals for further consideration. *Id.* ¶ 33; *see also Ward v. United States*, 586 U.S. 802 (2018) (mem.). At the time Ward filed his complaint, the case had been sent back down the chain to Superior Court for renewed consideration of Ward's guilty plea and conviction on Second Amendment grounds. *See* ECF 1 ¶ 36.

Ward filed his complaint in this Court on June 2, 2025. ECF 1. His Complaint brought three claims. In Claim 1, titled "Second Amendment," Ward contends that the District's "gun licensing and registration statutes were facially unconstitutional." *Id.* ¶ 61. In Claim 2, titled "Fifth Amendment," Ward contends that "the District's laws, customs, practices and policies generally banning the carrying of handguns in public violated [his] rights to travel and [to] equal protection secured by the Due Process Clause of the Fifth Amendment to the United States Constitution." *Id.* ¶ 70. And in Claim 3, titled "Right to Return of Handguns and Ammunition and Truck," Ward contends that the seizure and forfeiture of his property without notice or process also violated his

Fifth Amendment rights. *See id*. ¶¶ 73–78. Each claim is brought against each Defendant. *See id.* ¶¶ 69–70, 79. And as relief for his claims, Ward demands that this Court:

- Toll the statute of limitations for the filing of a claim against the United States under the Federal Tort Claims Act;
- Assume jurisdiction over proceedings regarding Ward's motion to withdraw his guilty plea;
- Declare unconstitutional the District's "registration scheme" as it existed at the time of his arrest;
- Seal arrest and prosecution records, and declare his arrest "a legal nullity"; and
- Award damages.

*See id*. at 16–17.

Both Defendants independently moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF 24 (District of Columbia); ECF 27 (United States). Shortly after the motions were filed, Ward provided notice that his guilty plea and conviction had both been vacated by the Superior Court for the District of Columbia. *See* ECF 42 at 4. Ward also moved for leave to amend his complaint. ECF 31. His proposed amendment contains no new factual allegations and instead adds only five short paragraphs of legal argument. *Compare* ECF 1, *with* ECF 30 at 18. The added legal authority Ward cited in his proposed amended complaint is also cited in his opposition to the District's motion to dismiss. *See* ECF 32 at 10.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As relevant here, "sovereign immunity is a jurisdictional issue." *Hulley Enters. Ltd. v. Russian Federation*, 149 F.4th 682, 691 (D.C. Cir. 2025).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that is more than "merely consistent with a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" to provide "grounds" of "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a 12(b)(6) motion, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true. *Id.* And where, as here, the plaintiff is proceeding pro se, the court must "liberally construe[]" the complaint, applying "less stringent standards than formal pleadings drafted by lawyers." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015).[2]

## III. ANALYSIS

### A. The United States Is Immune from Suit.

The Court begins with the United States' motion to dismiss. *See* ECF 27. Ward's claims against the United States all stem from the fact that the U.S. Attorney for the District of Columbia "damage[d]" Ward "by enforcing the District's unconstitutional gun registration and licensing laws." ECF 1 ¶ 2. The United States, in its motion, argues that it is immune from suits challenging such conduct. *See* ECF 27 at 4–5, 8. The Court agrees.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *accord United States v. Mitchell*, 445 U.S. 535, 538 (1980). This sovereign immunity can be waived, but only when such a waiver is

[2] The District of Columbia argues that this liberality principle should not be applied to Ward's complaint, *see* ECF 24 at 10–11, and Ward indicates that he has no objection to that argument, *see* ECF 32 at 2. The Court reaches the same conclusions below under either a narrow or broad reading of the complaint.

"unequivocally expressed." *Mitchell*, 445 U.S. at 538; *accord Lane v. Peña*, 518 U.S. 187, 192 (1996); *United States v. Dalm*, 494 U.S. 596, 608 (1990).

Ward indicates that his suit against the United States can be maintained under such an express waiver: the Federal Tort Claims Act. *See* ECF 1 ¶ 2. That statute operates as a limited waiver of sovereign immunity which renders the United States amenable to suit for certain, but not all, tort claims. *See* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 6 (1962).

But Ward is mistaken in arguing that the FTCA authorizes his action. The claims Ward brings here are not of the species for which the FTCA waives protection, because "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994). And Ward's claims *are* constitutional tort claims: The predicates for each of his three causes of action are either the Second Amendment or Fifth Amendment. *See* ECF 1 ¶¶ 60–79. The United States has not permitted itself to be sued for damages for such constitutional violations. *See Font v. U.S. Gov't*, No. 18-cv-1559, 2019 WL 1598016, at *3 n.5 (D.D.C. Apr. 15, 2019) ("It is long-established that the United States has not consented to be sued for money damages arising from constitutional violations.").

Ward responds by arguing that his "claims are not based solely on constitutional violations, but on analogous common-law torts arising from unlawful governmental conduct." ECF 34 ¶ 4. But that characterization does not seem to square with the complaint, which does not contain any common law causes of action. *See generally* ECF 1. And even if the Court was to try to read a common law cause of action into the complaint due to Ward's pro se status, the Court does not know of a common law claim that could apply against the United States here. Ward suggests that "wrongful use of legal process" could be a candidate, *see* ECF 34 ¶ 4, but the FTCA expressly exempts "abuse of process" torts from its sovereign immunity waiver, *see* 28 U.S.C. § 2680(h).

Likewise, claims for malicious prosecution (which Ward again disavows, *see* ECF 34 ¶ 1), are still protected by sovereign immunity, *see* 28 U.S.C. § 2680(h).[3] And the Court does not know what other common law claims could be levied against the United States based on the facts from Ward's complaint. *Cf. Stanford v. Clayton*, No. 17-cv-2335, 2018 WL 8963448, at *1 (D.D.C. July 5, 2018) (concluding that FTCA claims arising from civil enforcement action "sound in claims of malicious prosecution and abuse of process"), *aff'd*, 771 F. App'x 2 (D.C. Cir. 2019) (per curiam); *Hobley v. United States*, No. 07-cv-253, 2007 WL 1821157, at *2 (D.D.C. June 25, 2007) (concluding that claim which plaintiff labeled "false prosecution" is "substantively the same as that for malicious prosecution because it is premised on elements that lie at the core of malicious prosecution").

Ward's claims against the United States are thus barred by sovereign immunity. And, because any amendment on this issue would be futile, these claims are dismissed.

**B. Ward Has Failed to State a Claim Against the District of Columbia.**

The District of Columbia separately moves to dismiss on multiple grounds.[4] The Court concludes that Ward's claims against the District are time-barred and thus must be dismissed.

---

[3] These two torts—abuse of process and malicious prosecution—can still be maintained against the United States when they are predicated on the "acts or omissions of investigative or law enforcement officers." 28 U.S.C. § 2680(h). But the statute defines those officers as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Ward does not make allegations about any such officers, so that exception does not apply. *See Lewis v. D.C. Police Dep't*, 271 F. Supp. 3d 177, 180 (D.D.C. 2017) (concluding that United States Attorney "is not considered a law enforcement officer for purposes of the FTCA" such that the FTCA did not waive sovereign immunity for malicious prosecution and false arrest claims), *aff'd*, No. 17-5245, 2018 WL 1896537 (D.C. Cir. Apr. 3, 2018) (per curiam).

[4] These proposed grounds for dismissal include threshold issues, such as abstention doctrines and the *Heck* bar. *See* ECF 24 at 11–15. Those issues are conceivably no longer relevant given that Ward's state court proceedings have purportedly been resolved in his favor. *See* ECF 42. While neither Ward's complaint, ECF 1, nor his proposed amended complaint, ECF 30, incorporates that highly relevant fact, the Court notes that it is required "to consider a pro se litigant's complaint in light of all filings." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). And while Ward has, again, disclaimed any liberal reading of his complaint that might be afforded to pro se litigants, *see* ECF 32 at 2, even if the Court were to consider the District's *Heck* and abstention defenses, the end result would be the same because the Court finds that dismissal is warranted on independent grounds.

Ward's claims against the District of Columbia are all brought via 42 U.S.C. § 1983. ECF 1 ¶ 1. That law "allows private parties to sue state actors who violate their rights under the Constitution and laws of the United States." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365 (2025). Section 1983 itself does not create substantive rights; instead, it provides a cause of action for a plaintiff to obtain relief when rights created by *other* laws are violated by state or local actors. *See id.*; *see also Pitt v. District of Columbia*, 491 F.3d 494, 510 (D.C. Cir. 2007). Here, the substantive-right-conferring laws that Ward points to are the Second Amendment and the Fifth Amendment. *See* ECF 1 ¶¶ 60–79.

Section 1983 also has a statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). That limitations period is established by looking to the relevant state's limitations period for personal-injury torts. *Id.* In the District of Columbia, that period is three years. *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012). That means that if a section 1983 claim is brought more than three years after the claim accrued, it must be dismissed. *See id.*

Ward's claims accrued far more than three years ago. "A section 1983 claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* The first time Ward could have sued under section 1983—and thus the time when the three-year clock started ticking—was 2011, because that is when the alleged underlying constitutional violations occurred. *See* ECF 1 ¶¶ 22–28; *see also Earle*, 707 F.3d at 305 (a "section 1983 claim accrues when [the] wrongful conduct occurs"); *Muñoz v. Bd. of Trs. of Univ. of D.C.*, 427 F. App'x. 1, 4 (D.C. Cir. 2011) (per curiam). While it may not have been logistically easy for Ward to bring a lawsuit against the District in 2011, there was no legal bar that stopped him from having a complete and present cause of action at that time. The purported Second and Fifth Amendment violations had already been committed.

True enough, there is the *Heck* bar. That rule blocked Ward from collaterally attacking his conviction unless and until he got that conviction reversed, expunged, or declared invalid. *Heck*, 512 U.S. at 486–87. And since Ward only succeeded in reversing his conviction this year, *see* ECF 42, one could argue that the limitations period should not have begun until that development occurred, such that the three-year period was effectively tolled.

But that is incorrect. The alleged constitutional violations—the infringement on Ward's Second Amendment rights, the infringement on his right to travel, and the seizure of his car and gun, *see* ECF 1 ¶¶ 60–79—"accrue[d] before the setting aside of—indeed, even before the existence of—the related criminal conviction." *Wallace*, 549 U.S. at 394. And in such cases, the Supreme Court has rejected the suggestion that "the statute of limitations on the once valid cause of action is tolled as long as the *Heck* bar subsists." *Id.* at 394–95. *Heck* therefore provides no basis for tolling.

There is also no *other* basis for tolling the limitations period in this case. "A federal court considering a section 1983 claim . . . applies the tolling rules of the jurisdiction from which it draws the limitations period," meaning that the District of Columbia's tolling rules apply here. *Earle*, 707 F.3d at 305. And the District of Columbia is generally loath to toll the limitations period: Codified District law only allows for tolling in very limited circumstances, none applicable here, such as when a would-be plaintiff is a minor, mentally incapacitated, or imprisoned at the time the action accrues. *See, e.g.*, D.C. Code § 12-302. And District of Columbia courts generally "do[] not recognize an equitable tolling exception to the statute of limitations." *Johnson v. Marcheta Invs. Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998); *see also Copeland v. District of Columbia*, No. 25-cv-1792, 2026 WL 289271, at *3 (D.D.C. Feb. 4, 2026). There are two narrow exceptions when equitable tolling *can* be applied—"the lulling doctrine and the discovery rule," *Copeland*,

2026 WL 289271, at *3—but neither of those exceptions applies in this case, either. The "lulling doctrine" only allows tolling when a defendant has "done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156–57 (D.C. 1998). And the "discovery rule" applies in situations where a cause of action would accrue "before an individual can reasonably be expected to discover that he has a basis for legal redress." *Id.* Not only does Ward's complaint lack any allegations that would give rise to these two exceptions, it actively disclaims any indication that these exceptions could apply. Ward is emphatic that he has known that his constitutional rights were conceivably violated from the very time at which the challenged conduct occurred. *See* ECF 1 ¶ 27 (in 2011, Ward "expressed" to his criminal defense attorneys "his desire to fight the charges he was facing on both Second and Fourth Amendment" grounds); *see also* ECF 32 at 8 (Ward arguing that he has been pursuing his "[constitutional] rights diligently for 13 years"). There is thus no basis on which to toll constitutional claims that by now accrued long ago.

If the Court was inclined to apply a liberal reading of Ward's complaint, the Court might conclude that the complaint raises not just Second Amendment and Fifth Amendment claims, but also Fourth Amendment or common law claims for malicious prosecution.[5] After all, that type of claim only accrues once the underlying criminal case "is disposed of in favor of the . . . plaintiff," meaning that Ward's time limit for *that* claim only just recently got going. *Shulman v. Miskell*, 626 F.2d 173, 176 (D.C. Cir. 1980); *see also Wallace*, 549 U.S. at 394 (distinguishing malicious prosecution claims, like those in *Heck*, from other claims that accrue before conviction); ECF 42.

[5] *See Abdelfattah*, 787 F.3d at 533 (district courts "liberally construe[]" pro se pleadings); *see also* ECF 1 ¶¶ 27, 30 (complaint referencing alleged Fourth Amendment violations); *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (section 1983 allows for Fourth Amendment malicious prosecution claims). *But see* ECF 1 ¶¶ 60–79 (complaint purporting to bring only Second Amendment and Fifth Amendment claims); ECF 32 at 2 (Ward disclaiming any need for Court to read pleadings liberally).

And while some of the damages Ward suffered were incurred before any prosecution or conviction took place (e.g., the damages resulting from the forfeiture of Ward's car and firearm, ECF 1 ¶ 72), Ward also alleges damages resulting from the prosecution itself, *see, e.g.*, *id.* ¶¶ 69–70.

But even if that cause of action were to be read in here (which Ward does not seem to want, *see* ECF 34 ¶ 1), it would get Ward no further, because he has not pled facts to support a Fourth Amendment or common law malicious prosecution action against the District. "To support a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must plead facts establishing (1) that the defendant instituted or continued a criminal proceeding against the plaintiff; (2) that the proceedings terminated in favor of the plaintiff; and (3) that a predicate constitutional violation occurred as a result of the proceedings." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 251 (D.D.C. 2018); *see also Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 992 (D.C. Cir. 2014) (elements of common law malicious prosecution are "(a) a criminal proceeding *instituted or continued* by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice"). And while Ward may have alleged some of those elements, he has not alleged that the District of Columbia "instituted or continued a criminal proceeding" against him, because it is undisputed that the United States—not the District of Columbia—prosecuted him. *See* ECF 1 ¶ 2; ECF 24 at 13; ECF 32 at 2–3.

Therefore, the only claims that are available to Ward are ones that accrued more than three years ago. Ward's claims against the District of Columbia are consequently time barred. Since no amendment could cure this deficiency (including the amendment Ward proposes here, ECF 30), the Court will dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** both Defendants' motions to dismiss. The Court **DENIES** Ward's motion for leave to amend. A separate order follows this memorandum opinion.

JIA M. COBB
United States District Judge

DATE: September 30, 2026